UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

FILED BY ___ D.C.
SEP 08 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

Case No.: ___________
DR. JIMMY LAFAILLE
Plaintiff,
vs.
CIGNA HEALTH AND LIFE INSURANCE COMPANY,
Defendant.

**PRO SE COMPLAINT FOR MULTI-YEAR STRUCTURAL BREACH OF CONTRACT, TORTIOUS INTERFERENCE WITH CLINICAL REVENUES, CO-CONSPIRATORIAL PRESCRIPTION BLOCKADES, BAD-FAITH DIVERSION OF INSURED DISBURSEMENTS, AND INTENTIONAL INFLICTION OF EMOTIONAL AND PHYSIOLOGICAL INJURY DEMANDING $100,000,000.00 IN TOTAL DAMAGES**

The Plaintiff, Dr. Jimmy Lafaille, DNP, FNP-C, PMHNP-BC, appearing Pro Se, sues the Defendant, CIGNA HEALTH AND LIFE INSURANCE COMPANY, and alleges:

1. **JURISDICTION AND VENUE**: This is an action for multi-year structural breach of contract, tortious interference, and intentional conversion of healthcare revenue streams vastly exceeding $50,000, exclusive of interest and costs, falling under the jurisdiction of the Circuit Court of Palm Beach County, Florida. Venue is proper in the West Palm Beach division pursuant to Florida Statute 47.011 because the electronic account blocks, the bad-faith withholding of pre-authorized patient visit reimbursements, the backend credentialing manipulation, and the resulting severe financial, personal, and housing injuries occurred entirely within Palm Beach County, Florida . Service of process for Cigna Health and Life Insurance Company is directed to its official registered agent: Corporate Creation Network, Inc., 11380 Prosperity Farms Road, Suite 221E, Palm Beach Gardens, FL 33410.
2. **THE REVENUE AGREEMENTS AND CONTRACTUAL INFRASTRUCTURE**: Plaintiff is a female licensed healthcare clinician and board-certified Doctor of Nursing Practice (DNP) born female, utilizing she/her pronouns, operating a specialized private healthcare practice in Palm Beach County. Plaintiff utilizes Defendant's provider clearinghouse networks and electronic funds transfer (EFT) portals to submit medical insurance claims, receive direct deposits, and verify provider credentials. Under binding commercial network agreements, Defendant is contractually obligated to process valid clinical claims data, clear authorized payments, and distribute direct financial disbursements into Plaintiff's designated bank accounts within strict statutory timelines. Defendant has materially breached these core compacts by executing arbitrary electronic blockades across Plaintiff's payment portals, withholding contractually guaranteed clinical revenue distributions, and severing active electronic claim clearing links without cause or notice.
3. **THE REQUISITE ACCREDITATION FRAUD, SYSTEMIC DATABASE SABOTAGE, AND CO-CONSPIRATORIAL INTERCEPTS (2025–2026)**: Plaintiff explicitly alleges that her financial starvation and severe business disruption were initiated

directly by Defendant's bad-faith breach of provider agreements and the systemic vulnerability of its customer communication channels.

4. Throughout the summer of 2025, several of Defendant's internal corporate representatives explicitly and personally verified to Plaintiff that her psychiatric patients were fully and properly credentialed for in-network care coverage. Relying entirely on these direct, corporate authorizations, Plaintiff rendered critical psychiatric care to these members. Despite these explicit confirmations, Defendant summarily and retroactively refused to disburse payment for these clinical visits. Concurrently, Defendant's databases and telecommunication infrastructures were actively manipulated; Defendant occasionally and falsely reported to Plaintiff's active patients that she was completely uncredentialed with the network, while systematically disseminating entirely inaccurate, deflated fee quotes to incoming inquiries. Plaintiff forensically alleges that Defendant permitted known hackers to breach, compromise, and infiltrate its centralized phone and database tracking systems. This allowed outside bad-faith actors to control client interfaces, feed false metrics to active members, and completely subvert Plaintiff's professional reputation. This structural sabotage triggered a wave of panicked, hostile incoming phone calls where patients yelled at and disparaged Plaintiff's private clinical office because their claims were bad-faith processed as uncovered, destroying her client relationships.

4. **THE JUNE 2026 DECEPTIVE INTERCEPTION AND COMPLETE RECOVERY AMBUSH**: Plaintiff explicitly alleges that this multi-front administrative blockade escalated in June 2026 into a direct, organized technical ambush targeting her incoming practice distributions. To protect her clinical earnings from ongoing cyberattacks, Plaintiff submitted formal, mandatory updates modifying her interface configurations to enroll her newly established commercial banking routes. Defendant's administrative terminals formally accepted and logged the new banking configurations. Following this registration, Plaintiff successfully processed and submitted multiple high-value medical insurance claims throughout June 2026. However, from June 2026 continuously through the present date, absolutely zero liquid capital distributions or direct electronic funds have been deposited into Plaintiff's verified account. Plaintiff forensically alleges that Defendant or known hackers working in active tandem with its infrastructure, manipulated the backend clearing channels to freeze, suppress, and convert her refunds, blocking the initial access to her funds while her claims remain captured inside a concealed routing embargo.

5. **MULTI-YEAR TORTIOUS INTERFERENCE AND BUSINESS DAMAGE**: Defendant has actively and intentionally interfered with Plaintiff's established business relationships and active patient care networks. By freezing the portal interfaces, executing unauthorized data routing, and systematically suppressing critical electronic fund transfers, Defendant has blocked Plaintiff from collecting legitimate insurance reimbursements for active medical and psychiatric care rendered to insured members. Defendant has maintained these illegal platform constraints despite continuous administrative escalations, utilizing its control over the healthcare clearing infrastructure to cut off Plaintiff's clinical income streams and intentionally force the operational collapse of her private practice.

Because this intentional economic block has been executed continuously across 2020, 2021, 2022, 2023, 2024, 2025, and 2026, Plaintiff demands compensatory and punitive damages valued at **100, 000, 000 (One Hundred Million).**

6. **MANDATORY DATA PRESERVATION PARAGRAPH TO PREVENT CIVIL SPOLIATION**: The Defendant is hereby placed on formal, immediate administrative notice that it is under an absolute, binding legal obligation to implement an unconditional freeze on all digital information systems, storage arrays, cloud platforms, and physical media connected to the handling of the Plaintiff's files. **Defendant is explicitly ordered to isolate, safeguard, and completely preserve all electronic communications, internal telecommunication logs, recorded customer service line recordings, network audit trails, user access records, and metadata packets concerning any and all of Plaintiff's active patients from January 1, 2025, continuously through August 31, 2026.** Any attempt to delete, overwrite, or remotely wipe these electronic endpoints or telephone archives will be documented as an intentional, bad-faith act of spoliation of evidence, triggering immediate judicial sanctions, striking of defense pleadings, and structural adverse-inference jury instructions at the trial of this cause.
7. **DESTRUCTIVE HARM, PHYSICAL COLLAPSE, AND SEVERE MEDICAL NEGLECT**: As a direct result of Defendant's ongoing revenue blockades and hidden routing loops, Plaintiff's business has collapsed, and her family has been thrown into an immediate, catastrophic housing crisis, forcing her into an active **$5,775.00 past-due residential eviction notice**. Her family phone lines have been disconnected, and her commercial infrastructure is under immediate threat of total asset liquidation. Absent immediate court intervention, Plaintiff and her child face immediate displacement and absolute homelessness. The stress of immediate financial starvation directly caused Plaintiff's body weight to plummet from 150 lbs down to a dangerous 110 lbs, forcing her family into immediate fear for her life, causing severe dental neglect, and triggering a life-threatening emergency cardiac stabilization episode in a Taiwan hospital due to triggered medical PTSD and historical SVT.Plaintiff explicitly alleges that the aforementioned tortious actions, continuous harassment, and systemic campaign of personal and financial disruption executed by the Defendants have made it completely, physically impossible for her to obtain or follow up on necessary, mandatory medical and dental care as explicitly recommended by healthcare professionals since 2025. Due to this severe, manufactured state of absolute financial deprivation and total copay insolvency, Plaintiff has been forced into severe medical neglect, rendering her entirely unable to fund or access critical, required healthcare interventions, including significant dental work and necessary clinical evaluations for post-menopausal bleeding that require immediate financial payments.

**WHEREFORE**, Plaintiff, Dr. Jimmy Lafaille, respectfully requests this Court enter judgment against Defendant for compensatory and punitive damages valued at **$100,000,000.00 (One Hundred Million) Dollars** based on the damages caused by their active revenue sabotage, intentional psychological harm, and demands a trial by jury.

Respectfully submitted,

DR Jimmy Lafaille
JimmyLafaille@att.net
Tel: (561) 702-6309
DATE: 9/8/26